CASE 5—INDICTMENT—JUNE 10.

# Metz, &c., vs. Commonwealth.

#### APPEAL FROM KENTON CIRCUIT COURT.

By the third section of an act imposing a tax upon billiard tables, approved February 9, 1858, the municipal authorities of cities and towns have the exclusive right to grant licenses to keep billiard tables within their respective limits, to prescribe the rates to be paid, and to make such other provisions respecting the number of tables and the manner of keeping them as they may deem proper; and although the grantee may be licensed to keep more than one table, he is only bound, under the proviso to the section *supra,* to pay to the clerk of the county court one hundred dollars. He is not required to pay that amount for each table, though he set up more than one.

MENZIES & PRYOR, for appellants, cited *section* 3 of *Act of February* 9, 1858, impósing a tax upon billiard tables.

CAMBRON & FISK, on same side, cited *chapter* 350, *Session Acts* 1857–8, *p.* 43; *Ib., p.* 34, *chapter* 274; *Russell on Crimes,* 455, 322–3.

J. HARLAN, Attorney General, for Commonwealth, cited *Act of February* 9, 1858, *Session Acts, vol.* 1, *p.* 34.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Two indictments were found by the grand jury of Kenton county against Metz & Gregg. Each indictment charges that the defendants, on the 9th September, 1858, did unlawfully set up, and cause to be set up, a billiard table, and the same did keep and permit to be played upon.

A demurrer to the indictments having been overruled, the defendants pleaded not guilty, and by consent both cases were tried together.

As stated in the bill of exceptions, "it was proved by the Commonwealth that the defendants, as partners, set up and kept, on the 8th and 9th of September, 1858, and since, before the finding of the indictments, three billiard tables in a room in the city of Covington; and here the Commonwealth rested. The defendants moved the court to instruct the jury to find for the defendants, which motion was overruled," and the defendants excepted.

The defendants then read in evidence an ordinance of the city of Covington, providing for the licensing of billiard tables. The first section of the ordinance prescribes the manner in which application shall be made to the city council for license, and requires that the petition of the applicant shall be accompanied by a certificate of the clerk of the county court, stating that the legal fee has been paid. The second section provides that the license fee to be paid to the city treasurer, shall be at the rate of twenty-five dollars per annum for each billiard table designed to be used. Other provisions of the ordinance need not be noticed. The defendants also proved that they had obtained a license to keep a billiard room, or saloon, at twenty-five dollars for each table, before the 8th September, 1858, agreeably to the ordinance referred to. They then read the receipt of the clerk of the Kenton county court, dated June 26, 1858, which is in the following words: " Garrett Gregg and Jacob Metz, of the firm of Metz & Gregg, are hereby authorized to keep a billiard saloon, at their house on Market Space, for twelve months from date, having paid the sum of one hundred dollars, the tax required by law."

Various instructions were given to the jury, at the instance of the Commonwealth; among which was one to the effect that a city license did not dispense with the necessity, under the law, of previously paying to the clerk of the county court one hundred dollars *for each billiard table* set up, &c., in the city, and that no city license can afford any protection until that sum has been paid.

The defendants asked the court to instruct the jury that if a license to keep three billiard tables in a room, or saloon, agreeably to the ordinance of the city, was obtained, that such license was made effectual by the payment of one hundred dollars to the clerk of the county court, and if such payment was made, they should find for the defendants; but the court refused to give the instruction.

The jury found the defendants guilty, and assessed their fine at one hundred dollars each upon each indictment; and the court rendered judgment accordingly.

By this appeal the defendants seek a reversal of the judgment upon various grounds. The point mainly relied on,

however, is, that the action of the court below, in giving and
in refusing the instructions just noticed, was based upon an
erroneous construction of the act of 1858, imposing a tax on
billiard tables. (*Session Acts* 1857–8, *p*. 34.)

The first section of that act authorizes the county courts to
grant licenses for billiard tables to be kept in their respective
counties, outside of the incorporated limits of the cities and
towns of such counties; and the second section provides that
before any such license for a billiard table shall take effect, the
grantee shall pay to the clerk of the county court one hundred
dollars.

The third section is as follows: " All incorporated cities and
towns shall have power to grant licenses for billiard tables to
be kept within the corporate limits of such cities and towns,
and may, by ordinance, prescribe the rates to be paid for such
license; and make such other provisions concerning billiard
tables to be kept in their respective corporate limits as they
may deem advisable: *Provided*, That in all such cases, before
the license aforesaid takes effect, the grantee thereof shall pay
to the clerk of the county court the sum of one hundred dol-
lars, and take his receipt therefor."

It will be observed that the provisions of the first and second
sections of this act have exclusive relation to the grant of licen-
ces for billiard tables to be kept outside of the cities and towns
of the several counties. Within the corporate limits of such
cities and towns, plenary and exclusive jurisdiction over the
whole subject is, by the third section, confided to the municipal
authorities of such cities and towns. They have the exclusive
right to grant the license, and *to prescribe the rates to be paid*
therefor; and to make such other provisions concerning billiard
tables to be kept within their corporate limits as they may
deem advisable. The act imposes no restriction whatever as
to the number of tables which the grantee may be licensed to
keep. This is a matter confided entirely to the discretion of
the local authorities; and they may therefore permit the grantee
to set up one table, or as many more, and at such rates, as they
may deem advisable. By the proviso of this section, the *license*
granted by the local authorities, whatever may be the privi-

leges it confers with respect to the number of tables, is to "take effect" upon the single condition that the grantee thereof "shall pay to the clerk of the county court the sum of one hundred dollars, and take his receipt therefor." To say that, before such license should take effect, the grantee should be required to pay to the clerk the sum of one hundred dollars for each and every table authorized by the license to be set up by the grantee, would be to add to the act, by judicial construction, a provision which the Legislature chose to omit. The language of the proviso is plain and explicit, and admits of no such interpretation.

As, therefore, the appellants had, in all respects, complied with the requirements of the act, and with the ordinance of the city, passed in pursuance of its provisions, they were not liable to the severe penalties imposed by the Revised Statutes.

Whether the court erred in refusing the peremptory instruction asked by the defendants, upon the proof submitted by the Commonwealth, is a question which it becomes unnecessary to determine.

The judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.